UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Thomas H. Williams,

                                        Plaintiff,

            -v.-                                              5:06-CV-0827
                                                              (NPM)
CF Medical, Inc.,

                                        Defendant.

APPEARANCES:                            OF COUNSEL:

Riehlman Shafer and Shafer             Jane G. Kupperman
Attorneys for Plaintiff
P.O. Box 430
397 Route 281
Tully, New York 13159-0430

Costello, Cooney & Fearson, PLLC       Edward G. Melvin
Attorneys for Defendant
205 South Salina Street
4th Floor
Syracuse, New York 13202


Neal P. McCurn, Senior District Judge


### *Memorandum, Decision and Order*

### *I.  Introduction*

Plaintiff Thomas H. Williams sold medical products for defendant CF
Medical, Inc. from 1998 through 2005, when his contract was not renewed.
Plaintiff claims Defendant discriminated against him based on age in violation of

the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA")
and the New York Human Rights Law, N.Y. Exec. LAW § 290 et seq.
("NYHRL").  Plaintiff also asserts a claim for breach of contract under New York
common law.

Presently before the court are cross motions for summary judgment pursuant
to Fed. R. Civ. P. 56 by Plaintiff and by Defendant.  The motions are considered
on the voluminous papers submitted, without oral argument.  Because the court
finds as a matter of law that Plaintiff was not an "employee" of Defendant within
the meaning of the ADEA and NYHRL, but instead was an independent
contractor, summary judgment is granted in favor of Defendant on the age
discrimination claims.  Because Plaintiff fails to assert the diversity jurisdiction of
this court, the breach of contract claim is dismissed without prejudice.[1]

## II.  Summary Judgment Standard

A motion for summary judgment shall be granted "if the pleadings, the
discovery and disclosure materials on file, and any affidavits show that there is no
genuine issue as to any material fact and that the movant is entitled to a judgment
as a matter of law."  Fed. R. Civ. P. 56(c).  See also Beyer v. County of Nassau,

---

[1] Although in his complaint, Plaintiff asserts the citizenship of the parties, he fails to
assert diversity jurisdiction and further fails to assert an amount in controversy for the breach of
contract claim.  Moreover, Plaintiff fails to present evidence of an amount in controversy
regarding said claim in support of his motion for summary judgment.  Because the Plaintiff has
not met his burden of proving that the amount in controversy exceeds the jurisdictional
minimum, the court does not have subject matter jurisdiction over his state law breach of contract
claim once his federal question claim has been dismissed.  See Gunst v. Seaga, No. 05-Civ.-
2626, 2007 WL 1032265, at *2 (S.D.N.Y. Mar. 30, 2007).  Nevertheless, Plaintiff is not
precluded from bringing his breach of contract claim in state court, as the state statute of
limitations has been tolled during the pendency of this action.  See N.Y. C.P.L.R. § 205(a)
(McKinney 2008).  See also Coleman v. Corning Glass Works, 619 F.Supp. 950, 957 (W.D.N.Y.
1985).

524 F.3d 160, 163 (2d Cir. 2008).  "In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at trial."  Major League Baseball Props., Inc. v. Salvino, Inc.,  542 F.3d 290, 309 (2d Cir. 2008) (internal quotation and citation omitted).

The movant has the burden to show that no genuine factual dispute exists. See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598 (1970)).  Moreover, when the court is deciding a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor.  See id.

When deciding whether a material issue of fact is in dispute, the court is cognizant that a fact is "material" if "it might affect the outcome of the suit under governing law."  White v. Haider-Shah, No. 9:05-CV-193, 2008 WL 2788896, at *4 -5  (N.D.N.Y. Jul. 17, 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986)).  Also, "[a] material fact is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Id., quoting Anderson, 477 U.S. at 248, 106 S.Ct. at 2510.

### *III.  Background*

The issue of whether Plaintiff was an employee of Defendant or an independent contractor is aggressively disputed by the parties.  The court's task of sifting through the statements of undisputed material fact – comprised of 195 paragraphs in Plaintiff's submissions and 125 paragraphs in Defendant's submissions – as well as the accompanying voluminous record, has been compounded by the failure of both parties to adhere to this court's local rules.  For

3

example, despite this court's rule that "[e]ach fact listed shall set forth a *specific citation* to the record where the fact is established[,]" and "[e]ach denial shall set forth a *specific citation* to the record where the factual issue arises[,]" the parties, more frequently the Plaintiff, either fail to include any citation at all, or cite generally an affidavit, declaration or deposition without referencing a specific page or paragraph number.  See N.D.N.Y. R. 7.1(a)(3) (emphasis added).

The following facts are either undisputed or, where disputed by Defendant, such dispute is deemed irrelevant because the court reaches its conclusions as to same, as it must, by resolving all ambiguities and drawing all reasonable inferences in Plaintiff's favor.  It also should be noted that, pursuant to Local Rule 7.1(a)(3), the court deems admitted any statement of material fact that is not specifically controverted by the opposing party.  See id.

Defendant CFM became incorporated in 1996 by Constance Frisch ("Frisch"), who is its sole owner and president.  Defendant sells various manufacturers' medical equipment and supplies, the majority of which are Philips Medical ("Philips") products.  Defendant contracts with Philips as a manufacturer's representative and also as a distributor of its products.  Plaintiff Williams was a sales representative for Defendant from 1998 until 2005.  The parties entered into yearly contracts, beginning January 1, 1998, and ending December 31, 2005.  See Exs. P and Q to Aff. of Thomas H. Williams, Jan. 2, 2008, ¶ 7, Dkt. No. 12 ("Williams Aff. I").  On October 24, 2005, Frisch notified Plaintiff that Defendant would not be renewing his contract for 2006.  Plaintiff commenced this action July 5, 2006.

According to Plaintiff, Frisch never told him he would be or was an

4

employee for Defendant.  Plaintiff was paid on straight commission for his services to Defendant and never received a salary.  Plaintiff did not receive any health or dental insurance from Defendant, nor did he participate in Defendant's retirement plan.  In fact, while Plaintiff asked Frisch if he could participate in the health and retirement plans, Frisch denied that request.  Moreover, Plaintiff did not receive any paid vacation or sick time from Defendant.

It is undisputed that Plaintiff worked out of his home and was responsible for the expenses related to his position as a sales representative, including his car, gas, computer, fax machine, internet, postage, storage, utilities, phone, and all of the supplies necessary for his office.  Plaintiff also had the ability to hire a staff person for his home office, although he did not do so.

Defendant provided Plaintiff with business cards that identified him as a sales representative for Defendant, which included Plaintiff's home office address in Cortland, New York, as well as logos for both Defendant and Philips.  Defendant also provided Plaintiff with business cards identifying him as a sales representative of Scottcare, which included the Scottcare business address and logo.  In addition, Plaintiff had access to Philips letterhead, in an electronic format provided by Defendant, which included the Philips logo and identified Plaintiff as a sales representative of Philips.

Defendant also provided Plaintiff with software, which was necessary for Plaintiff to report his sales activity to Defendant.  Plaintiff was provided with literature in the form of brochures and technical specification sheets regarding Philips products.  In addition, Defendant provided Plaintiff with Philips demonstration equipment – working models of the equipment he was selling – in

order to facilitate sales.  Plaintiff was responsible for eighty percent of the list price of any such equipment, should he fail to return it.  See Exs. P and Q to Williams Aff. I.  When such equipment was shipped by Plaintiff to Philips, the shipping costs were paid by Philips, not Plaintiff.  On the rare occasion that Plaintiff shipped such equipment to another sales representative, the shipping was paid for by either Plaintiff or Defendant.

While providing services to Defendant as a sales representative between 1998 and 2005, Plaintiff received 1099 forms from Defendant for each and every one of those years, and accordingly treated himself as self employed for tax purposes for those years.  Also during those years, Plaintiff took a number of tax deductions relating to his home office and his status as a self employed person for items such as office supplies, internet access, telephone access and travel expenses.[2]

According to Plaintiff, sixty percent of the time he would set his own hours. The remainder of his time was spent on customer training and lead follow-up, as determined by Philips, and for which he had mandated time limits for completion.

Plaintiff received training regarding selling techniques, price quoting, customer service, and training customers on the use of products.  Such training was accomplished through meetings and conference calls.  Philips conducted a four-day meeting regarding product training once per year.  One such meeting

---

[2] The court acknowledges Plaintiff's reliance on his own assertion set forth in an affidavit in opposition to Defendant's statement of material fact relating to the effect of his tax status as a self employed person, to wit, "employees may also take deductions for home offices."  See Aff. of Thomas H. Williams, Feb. 29, 2008, ¶ 96, Dkt. No. 21 ("Williams Aff. II").  Such an assertion is conclusory in nature and does not constitute the requisite "specific facts showing a genuine issue for trial[]" in order to avoid summary judgment.  See Fed. R. Civ. P. 56(e).

attended by Plaintiff occurred in New Orleans in 2000. Plaintiff was reimbursed for his hotel room relevant to his attendance at that meeting. Plaintiff also attended meetings in California, Atlanta and Chicago, for which his airfare was reimbursed at least once.

Defendant reimbursed Plaintiff for travel related expenses that Defendant received from Philips. On one occasion, Defendant directly reimbursed Plaintiff for his hotel and airfare expenses associated with Plaintiff's assistance of other sales representatives at the request of Defendant. Twice Defendant reimbursed Plaintiff for hotel and meals related to his attendance at Defendant's sales meetings.

Defendant conducted telephone conferences on occasion, perhaps once per month, but at least once per quarter, in order to follow up with sales representatives, brainstorm strategy, and go over forecasting and call scheduling. Not all of these telephone conferences with Defendant were mandatory. Defendant also held a yearly in-person meeting and encouraged sales representatives to attend. Plaintiff further received training from Defendant, generally via conference call, regarding Philips's procedures, including quoting tools. On one occasion, midway through Plaintiff's tenure with Defendant, Plaintiff attended a three-day training by Defendant regarding selling strategies for Philips's products.

Plaintiff did not have authority to set pricing on the products that he sold. Pricing was determined by Defendant or Philips.

Plaintiff provided forecasts to Philips through Defendant. Philips required monthly forecasts from Defendant, who in turn required monthly forecasts from its

sales representatives.  Defendant also requested forecasts from its sales representatives a few times per year regarding distributor sales.

Plaintiff was instructed by Defendant to participate in some sales activities with Philips employees.

Pursuant to the contracts between Plaintiff and Defendant, Plaintiff could not sell products that compete with Philips products.  Several of the contracts provide that Plaintiff was also to sell products of companies such as Suntech, Oridion and Scottcare.  However, ninety percent of Defendant's business came from sales of Philips products.  The contracts further outlined Plaintiff's commission and quotas, as well as the territory within which he could sell.  Within the territory assigned to Plaintiff were specific accounts to which he could sell.  There were also accounts within Plaintiff's territory to which he could not sell, as those accounts were handled directly by Philips.

## IV.  Discussion

### A.  Age Discrimination Claims

According to the ADEA as well as the NYHRL, an employer may not, among other things, terminate an employee because of his or her age.  See 29 U.S.C. § 623(a)(1) (2006); N.Y. Exec. Law § 296(3-a)(a) (McKinney 2008). Discrimination claims pursuant to the ADEA and NYHRL are subject to the same analysis.  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001). Persons who are not employees within the meaning of the ADEA and NYHRL are not protected by those statutes.  See Tuohy v. Bally, Inc., No. 95-Civ.-1499, 1997 WL 66784, at *3 (S.D.N.Y. Feb. 14, 1997).  Here, Defendant principally argues that Plaintiff was not its employee, but instead was an independent contractor, and

8

consequently, the age discrimination claims must be dismissed on that basis.  For his part, Plaintiff argues that he was not an independent contractor, but an employee of Defendant, and consequently is a "covered person" under the ADEA, requiring an award of summary judgment to Plaintiff on that issue.

The court's determination of whether a worker is an "employee" or an "independent contractor" within the meaning of the ADEA must be undertaken in accordance with common law agency principles.  See Frankel v. Bally, Inc., 987 F.2d 86, 90 (2d Cir. 1993).  The Supreme Court has set forth several factors, "which are culled from the federal law of agency" in order to guide the court's determination.  Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 114 (2d Cir. 2000) (citing Community for Creative Non-Violence v. Reid, 490 U.S. 730, 109 S.Ct. 2166 (1989)).  These factors, which are not exhaustive, are as follows:

> [1] the hiring party's right to control the manner and means by which the product is accomplished ... [;] [2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; and [13] the tax treatment of the hired party.

Id., citing Reid, 490 U.S. at 751-52, 109 S.Ct. 2166 (footnotes omitted).  While not one of these factors is dispositive, and indeed, "all of the incidents of the relationship must be assessed and weighed", Frankel, 987 F.2d at 90, "the 'greatest emphasis' should be placed on the first factor – that is, the extent to which the

hiring party controls the 'manner and means' by which the worker completes his or her assigned tasks[,]" Eisenberg, 237 F.3d at 114 (quoting Frankel, 987 F.2d at 90). Finally, it is important to note that while the determination of whether each Reid factor is present or absent in a particular case is a question of fact, the balancing of the Reid factors and the ultimate determination of whether a worker is an employee or an independent contractor is a question of law.[3] See Eisenberg, 237 F.3d at 115.

Initially, it is undisputed that Plaintiff worked out of his home instead of Defendant's office, was paid solely on commission, did not receive any employee benefits such as health insurance, pension, or paid time off, that he received 1099s instead of W2s for each year of his relationship with Defendant, and that he filed his taxes as a self employed person. Accordingly, the fourth, eighth, twelfth and thirteenth factors weigh in favor of a finding that Plaintiff was an independent contractor, not an employee. See Anyan v. New York Life Ins. Co., 192 F.Supp.2d 228, 238-39 (S.D.N.Y. 2002) (hired party was deemed an independent contractor where he was not required to work from hiring party's offices, received no benefits and was not taxed as an employee) (aff'd, 68 fed. Appx. 260, 2003 WL 2153167 (2d Cir. 2003)); Tuohy, 1997 WL 66784, at *4 (where hired party was paid based on performance instead of drawing a salary and received no employee benefits, he was deemed an independent contractor).

---

[3] It bears repeating that the already difficult task of applying the Reid factors to the facts of this case was compounded by Plaintiff's failure in his memorandum of law to cite to the fact record or to Plaintiff's lengthy statement of undisputed material fact. Consequently, the court was required to sift through Plaintiff's 195-paragraph statement of material facts, which is at times duplicative and is presented in no discernible order, in order to identify the location in the voluminous record where support may be found for Plaintiff's factual assertions.

Factors five, ten and eleven, however, weigh in favor of a finding that Plaintiff was an employee. Plaintiff's relationship with Defendant lasted six years, and it is clear that Defendant is in business and Plaintiff's work was part of the regular business of Defendant. See Anyan, 192 F.Supp.2d at 238; Tuohy, 1997 WL 66784, at *4 (both finding that a long-term relationship between the parties lends itself to a finding that hired party was an employee); Eisenberg, 237 F.3d at 119 (fact that defendant was in business and that plaintiff's work was in the regular business of defendant weighs in favor of conclusion that plaintiff was an employee).

Regarding the ninth factor, Plaintiff's role in hiring and paying assistants, Plaintiff admits that he was able to hire staff for his home office, although he did not do so. Nonetheless, the fact that Plaintiff was able to hire and pay assistants weighs in favor of a finding that he was an independent contractor. See Anyan, 192 F.Supp.2d at 239.

As for the sixth factor, whether Defendant had the right to assign additional projects to Plaintiff, the record reflects one occasion when Plaintiff was asked by Frisch to assist other sales representatives. While this would typically lend itself to the conclusion that Plaintiff was an employee, the fact that the record reflects only one incident in the course of a six year relationship leads the court to give little weight to this factor.[4]

The level of skill required, the second Reid factor, weighs in favor of a finding that Plaintiff was an independent contractor. In addition to several years

---

[4] The court notes Plaintiff's contention that representatives of Philips would routinely direct him to provide customer training or follow up on leads. However, the record reflects that these are not additional projects, but duties related to Plaintiff's position as a sales representative.

of sales experience, Plaintiff has achieved an undergraduate degree in behavioral sciences as well as a graduate degree in extra corporal technology. Where a position requires "specialized skills of the sort typically acquired through experience and/or education[,]" the hired party is more likely deemed an independent contractor rather than an employee. See Eisenberg, 237 F.3d at 118 (emphasis omitted). Moreover, the skills required of a sales person are often specialized. See Lane v. David P. Jacobsen & Co., 880 F.Supp. 1091, 1099 (E.D. Va. 1995). Notably, Plaintiff's sales experience here revolved around medical supplies and equipment, which requires a certain level of sophisticated knowledge. Finally, it is significant that Plaintiff was hired because of his sales experience. See Tagare v. Nynex Nework Sys. Co., 994 F.Supp. 149, 157 (S.D.N.Y. 1997). Accordingly, the second factor weighs in favor of a finding that Plaintiff was an independent contractor.

The third factor, the source of the instrumentalities and tools, heavily weighs in favor of a finding that Plaintiff was an independent contractor. Plaintiff argues this factor weighs in favor of a finding that he was an employee because all demonstration materials, supplies, product literature and letterhead were provided to him by Defendant. However, one court has concluded that where, as here, the hired party was provided with training and sales samples, said party was nonetheless deemed an independent contractor because his salesmanship, which is the principal skill used to perform his work, was not provided by the hiring party. See Tuohy, 1997 WL 66784, at *4. Another court found this factor to be at best inconclusive to the Reid analysis where although the hired party was provided with an office, secretary and office equipment, he was working at home or

12

traveling most of the time, and where he used his home address as his business address for tax purposes and claimed as tax deductions telephone charges, supplies and depreciation of office equipment.  See Tagare, 994 F.Supp. at 157.  Here, Plaintiff worked solely out of his home and provided all of the equipment necessary for his home office, including furnishings, telephone, computer service, and office supplies, and accordingly took tax deductions for such expenses.  Also, it is significant that the court in Tagare gave little, if any, weight to the fact that the hired party there, as here, used business cards and letterhead with the hiring party's logo.  See id., at 158.

Regarding the seventh factor, the discretion over when and how long to work, Plaintiff argues that he was required by Philips to be available at specified time periods in order to assist in sales calls, demonstrations or training.  Nonetheless, according to Plaintiff's own testimony he had complete discretion over when and how long to work sixty percent of the time, with the remaining forty percent devoted to customer training and lead follow-up, as determined by Philips, not Defendant, and for which he had mandated time limits for completion.  As such, the court is not inclined to, as Plaintiff urges, consider this factor to weigh in favor of a conclusion that Plaintiff was an employee.

The first factor, of which the court is required to give the most weight, is the hiring party's right to control the manner and means by which the product is accomplished.  Plaintiff claims that Defendant's control over the manner and means of the work he performed was "significant and extensive," while Defendant argues that Plaintiff had significant, if not complete, discretion and independence over his day-to-day activities.  Although the level of Defendant's control over the

13

manner and means of Plaintiff's work actually falls somewhere in between the extreme ends argued by the parties, it nonetheless tips decidedly in favor of the conclusion that Plaintiff was an independent contractor, and not an employee of Defendant.

Resolving all factual ambiguities and drawing all reasonable inferences in Plaintiff's favor, as the court must do when deciding Defendant's motion for summary judgment, the court notes that Plaintiff was required to follow up on leads in a timely manner, meet sales quotas, attend training, and provide business plans and forecasts; that Plaintiff was limited in the accounts within his assigned geographic area to which he could sell; and that the process of his sales were monitored, all of which, Plaintiff argues, support his position that he was an employee of Defendant's. However, courts have found the hired party to be an independent contractor, not an employee as Plaintiff contends, under similar circumstances.[5] For example, in Tuohy, as here, the plaintiffs were authorized to sell particular categories of the defendant's merchandise in specific geographic areas and agreed not to sell competing products. See Tuohy, 1997 WL 66784, at *2. Plaintiffs there were also required to attend trade shows, as Plaintiff here was required to attend training meetings and conference calls. See id. Moreover, in

_____

[5] Plaintiff cites several cases from the New York Appellate Division, Third Department, in support of his argument that other persons similarly situated have been deemed to be employees. However, those cases involve appeals of decisions by the Unemployment Insurance Appeal Board, not, as here, employment discrimination claims. Consequently, the cases cited by Plaintiff do not analyze the employee-independent contractor issue pursuant to the factors set forth in Reid, but instead interpret New York Labor Law section 511 which defines "employment" under that statute. Moreover, contrary persuasive authority exists in the form of federal courts applying the Reid factors in the employment discrimination context. Accordingly, the court gives little weight to the New York state caselaw cited by Plaintiff.

Tuohy, plaintiffs similarly were subject to sales targets, their job performance was periodically reviewed, and unlike here, their daily activities were monitored. See id. Nonetheless, the court there concluded that plaintiff was an independent contractor, not an employee. See id., at 5. Similarly, in Anyan, the court there found that plaintiff was an independent contractor despite the fact that he was required to meet production standards, as Plaintiff here was required to meet sales quotas. See Anyan, 192 F.Supp.2d at 235.

While it is true that certain requirements and limits were imposed upon Plaintiff by Defendant, "[s]ome control by the employer over the [hired] party remains consistent with a finding that the [hired] party is an independent contractor." Clesi v. Zinc Corp. of Am., No. 5:01-cv-374, 2001 WL 1223456, at *3 (N.D.N.Y. Oct. 11, 2001) (citing Reid, 490 U.S. at 752). Here, while Plaintiff was limited to a certain geographic sales territory, and for some products, to certain hospital accounts within that territory, he nonetheless had the ability to seek out new accounts and had control over the manner and means by which he accomplished his sales. Moreover, there is no evidence here of the kind of daily control of Plaintiff's activities as found by the Court of Appeals for the Second Circuit in Eisenberg, where the plaintiff there was deemed an employee of defendant moving company as she was given orders on a daily basis, was told where to go and what to do, and at job sites, was directed regarding which objects to move. See Eisenberg, 237 F.3d at 118. Here, the majority of Plaintiff's time was spent as he saw fit in order to achieve the sales quotas pursuant to his contract, unsupervised by Defendant. Accordingly, the first and most important Reid factor weighs in favor of a finding that Plaintiff was an independent

15

contractor.

Balancing all of the <u>Reid</u> factors, giving appropriate weight to each, it is clear that Plaintiff here was an independent contractor.  First and foremost, Plaintiff carried out his responsibilities as a sales representative on a day-to-day basis generally unsupervised by Defendant.  While Plaintiff's position as a sales representative was part of Defendant's regular business, and while the relationship between the parties continued for six years, the remaining factors direct a finding that Plaintiff was an independent contractor, not an employee.  The following characteristics, although not determinative when viewed in isolation, are highly indicative of a person who is an independent contractor: that Plaintiff received 1099s instead of W2s, was paid solely on commission, worked solely from his home office, incurred all of the expenses associated with his home office and took tax deductions for same, declared his status as self employed on his tax forms, and did not receive any employee benefits from Defendant.  Combining these factors with the lack of day-to-day control by Defendant of Plaintiff's work as well as Plaintiff's exceptional discretion over when and how long to work, Plaintiff's status as an independent contractor is evident.

Plaintiff is deemed to have been an independent contractor, and was therefore not an employee within the meaning of the ADEA and NYHRL.  Consequently, Defendant's motion for summary judgment as to Plaintiff's age discrimination claims is granted, and Plaintiff's summary judgment motion in this regard is likewise denied.  Further, as previously explained, because Plaintiff fails to assert the diversity jurisdiction of this court, the remaining claim for breach of contract is dismissed without prejudice.  However, it bears repeating that Plaintiff

is not precluded from bringing his breach of contract claim in state court, as the state statute of limitations has been tolled during the pendency of this action.

## V.  Conclusion

In accordance with the foregoing discussion, it is

ORDERED that the motion for summary judgment by plaintiff, Thomas H. Williams, against defendant, CF Medical, Inc., see Dkt. No. 12, is DENIED and the cross motion for summary judgment by defendant, CF Medical, Inc., against plaintiff, Thomas H. Williams, see Dkt. No. 18, is GRANTED as to plaintiff's age discrimination claims; and it is further

ORDERED that plaintiff's motion for summary judgment is DENIED and defendant's cross motion for summary judgment is GRANTED regarding the remaining claim for breach of contract pursuant to New York common law, except that said claim is dismissed without prejudice.

The clerk of the court is accordingly directed to close the case.


IT IS SO ORDERED.



DATED:     March 4, 2009
           Syracuse, New York


_____
Neal P. McCurn
Senior  U.S. District Judge

17